UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re:

STAIN-LESS, INC. *d/b/a* CEDARWOOD CLEANERS,   Chapter 7
                                                Case No. 8:22-70689-las
        Debtor.

------------------------------------------------------------------------X
ROBERT L. PRYOR,

        Appellant,
                                                Adv. Proc.
                                                Case No. 8:23-08001-las

  v.
                                                **MEMORANDUM
                                                AND ORDER**
                                                24-CV-7895-SJB

DAVID ROSENBLATT, DHR PROCESSING INC.,
MARZAK REALTY ASSOCIATES LLC, and
UNITED STATES,

        Appellees.
------------------------------------------------------------------------X
**BULSARA, United States District Judge:**

      The Appellant-Trustee Robert Pryor (the "Trustee") has appealed the decision of the Bankruptcy Judge, Louis A. Scarcella, denying his motion to approve a settlement agreement with Defendants David Rosenblatt ("Rosenblatt") and DHR Processing, Inc. ("DHR") in adversary proceeding, Case No. 8:23-08001.  The United States Environmental Protection Agency (the "EPA") and Marzak Realty Associates LLC ("Marzak") are creditors of the Debtor Stain-Less, Inc., doing business as Cedarwood Cleaners, and parties to the adversary proceeding.  The EPA and Marzak both objected to the settlement in the first instance, and now seek to have the Trustee's appeal

dismissed because the settlement denial was neither a final order, nor an otherwise appealable interlocutory or collateral order.  (Br. of Appellee-Creditor USA dated Feb. 12, 2025 ("US EPA Br."), Dkt. No. 12 at 7–13; Appellee's Br. by Marzak Realty Assocs. LLC dated Feb. 12, 2025 ("Marzak Br."), Dkt. No. 11 at 2–3, 13–15).

With limited exception, district courts have jurisdiction over bankruptcy appeals only when a final decision is rendered, or where the appellant has received leave to file an interlocutory appeal on a non-final decision.  28 U.S.C. § 158(a); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) ("Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case.").  Where subject matter jurisdiction is lacking, the Court need not— indeed, may not—address the merits of the appeal.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  A denial of a motion to approve a settlement generally does not finally dispose of a discrete dispute, and it does not here; nor is it a collateral order *or* an appropriate appeal of an interlocutory order.  The Court agrees that dismissal for lack of jurisdiction is appropriate.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying bankruptcy case, No. 8:22-70689, commenced with the Debtor's filing of a voluntary petition under Chapter 11 on April 8, 2022. (Tr. dated Oct. 29, 2024 ("Oct. 2024 Tr."), Dkt. No. 6-4 at 7:12; Ch. 11 Voluntary Petition dated Apr. 8, 2022, Case No. 8:22-70689, Bankr. E.D.N.Y., Dkt. No. 1).  The Debtor is a dry-cleaning business, wholly owned by Rosenblatt, a defendant in the adversary proceeding. (Oct. 2024 Tr. at 9:4–5; 13:25–14:7).  Rosenblatt transferred the dry-cleaning business to the other

defendant, DHR, shortly before filing the voluntary petition on behalf of the Debtor, and after his former landlord, Marzak, obtained a judgment against him.  (*Id.* at 8:21–9:5).  There was no consideration paid for the transfer of the assets.  (*Id.* at 14:10–12).  The bankruptcy proceeding was converted to a Chapter 7 proceeding, (Order dated Sep. 19, 2022, Case No. 8:22-70689, Bankr. E.D.N.Y., Dkt. No. 44; Oct. 2024 Tr. at 7:25), and the Trustee was appointed that same day.  (Notice of Appointment dated Sep. 19, 2022, Case No. 8:22-70689, Bankr. E.D.N.Y., Dkt. No 47; Oct. 2024 Tr. at 8:1–2).  On January 6, 2023, the Trustee initiated an adversary proceeding against Rosenblatt and DHR, and filed an amended complaint with a total of five claims for recovery of money, fraudulent transfer, and successor liability.  (Compl. dated Jan. 6, 2023, Case No. 8:23-08001, Bankr. E.D.N.Y., Dkt. No. 1 ¶¶ 31–45; Am. Compl. dated Mar. 29, 2023, Case No. 8:23-08001, Bankr. E.D.N.Y., Dkt. No. 12 ¶¶ 31–55).

On July 10, 2023, the Trustee filed a motion to approve a settlement agreement, pursuant to 11 U.S.C. § 105 and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.  (Mot. to Approve Settlement dated July 10, 2023, Case No. 8:23-08001, Bankr. E.D.N.Y., Dkt. No. 17-2).  The proposed settlement was for a total of $ 100,000, (Proposed Stipulation and Order, Case No. 8:23-08001, Bankr. E.D.N.Y., Dkt. No. 17-1 ¶ 3), paid by Rosenblatt in return for release of all claims by the Trustee.  (*Id.* ¶ 11).  Judge Scarcella held a hearing on the motion on December 7, 2023, to determine whether the proposed settlement was fair, equitable, and in the best interest of the estate.  (Tr. of Hr'g dated Dec. 7, 2023 ("Dec. 2023 Tr."), Case No. 8:23-08001, Bankr. E.D.N.Y., Dkt. No. 30).  Marzak objected to the settlement—he holds a judgment for

3

over $ 400,000—because of the minimal recovery he would receive while Rosenblatt and DHR could continue to operate their dry-cleaning business. (Oct. 2024 Tr. at 6:19–7:3; Marzak Br. at 9). The US EPA—which holds a claim for nearly $ 6.9 million resulting from contamination with hazardous substances on the property—also opposed the settlement for similar reasons. (Oct. 2024 Tr. at 7:4–8; US EPA Br. at 3, 5). On October 29, 2024, Judge Scarcella continued the hearing, and rendered an oral decision on the record. (Oct. 2024 Tr. at 6:2–3).

He analyzed the proposed settlement under the seven-factor *Iridium* test[1], (*id.* 10:10–12), and found that there was a high likelihood of litigation success that weighed "in favor of not approving the settlement." (*Id.* at 16:17–21). The objections of creditors also weighed heavily against approval. (*Id.* at 23:20–22). Specifically, Marzak's claim against the debtor was for $ 448,064.70, (*id.* at 22:16–21), and US EPA filed a claim for close to $ 6.9 million. (*Id.* at 23:1). Both objected, contending that Rosenblatt engineered

---

[1] Those factors are:

(1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007) (quotations omitted).

4

a transaction to transfer the assets of Stain-Less to DHR without any liabilities, (Oct. 2024 Tr. at 24:10–17), and that it was not "fair and equitable" to allow the new business to continue generating revenue without being held liable for any of the debt, in return for a mere $ 100,000 on the over $ 7.4 million owed.  (*Id.* at 24:24–25:9).  Moreover, no other party supported the settlement, (*id.* at 25:10–13); and while the releases were not overbroad, they were inappropriate, given the underlying fraudulent transfer of assets that would permit Rosenblatt and DHR to continue to operate their business free of claims and liability.  (*Id.* at 26:19–27:4).  Judge Scarcella therefore denied the motion to approve the settlement.  (Order Denying Motion to Approve Compromise and Settlement dated Oct. 29, 2024 ("the Order"), Dkt. No. 1-2).  On November 12, 2024, the Trustee filed a notice of appeal to the undersigned.  (Notice of Appeal dated Nov. 12, 2024, Dkt. No. 1).

## DISCUSSION

I. <u>The Decision to Deny Settlement Approval is Not a Final Order.</u>

Section 158(a)(1) of the Bankruptcy Code provides that a district court has jurisdiction to "hear appeals" from "final judgments, orders, and decrees" of "bankruptcy judges."  28 U.S.C. § 158(a); *Ritzen*, 589 U.S. at 39.  "The standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation."  *In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012) (quotations omitted).  Because bankruptcy litigation is often an "umbrella" encompassing "numerous actions," orders can be final if they "finally dispose of discrete disputes within the larger case."  *Id.* (quotations omitted).  And "a 'dispute,' for appealability purposes in

5

the bankruptcy context, means at least an entire claim on which relief may be granted." *In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (quoting *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775–76 (2d Cir. 1992)).  A bankruptcy court decision that allows a "case to proceed" does not generally qualify as final, even under the "more flexible concept of finality" applicable to such proceedings.  *In re Delaney*, 110 F.4th 565, 567 (2d Cir. 2024) (quotations omitted), *cert. denied sub nom. Delaney v. Messer*, 145 S. Ct. 1070 (2025).

An order denying a proposed settlement of an adversary proceeding lacks the indicia of a final disposition or resolution.  A bankruptcy court's decision to *approve* a settlement, "conclusively resolve[s] the adversary action by establishing the settlement amount and extinguishing claims."  *In re The Bennett Funding Grp., Inc.*, 439 F.3d at 160.  It "alters the status quo and fixes the rights and obligations of the parties."  *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015).  A decision to deny approval does precisely the opposite: the litigation continues, and no claims are extinguished.  *In re Merle's Inc.*, 481 F.2d 1016, 1018 (9th Cir. 1973) ("An order approving a compromise . . . is final because it finally determines the rights of the parties.  An order disapproving a compromise, however, is not final.  It determines no rights and settles no issues.  It merely leaves the question open for future adjudication.").

To be sure, the Order "does rule out the specific arrangement of relief embodied" in the settlement proposed.  *Bullard*, 575 U.S. at 503.  But that does not make the Order final.  After Judge Scarcella denied approval, the bankruptcy court was "still left with an adversary proceeding."  *In re Holloway*, 370 F. App'x 490, 493 (5th Cir. 2010) (per

6

curiam). Indeed, the Trustee conceded as much. (US EPA Br. at 9; Dec. 2023 Tr. at 41:19–22 ("Q: Now, if this settlement is not approved, what do you expect will happen with regard to the adversary proceeding? [Trustee]: I guess we'll continue it. And we'll continue to conclusion.")). In other words, the litigation continues—the parties resume contesting the merits until decision by the factfinder. Alternatively, or perhaps even at the same time, the parties are free to renegotiate a resolution addressing the deficiencies that led to the rejection of the proposed settlement. (Oct. 2024 Tr. at 28:5–11 ("[T]he Chapter 7 Trustee can pick up on the adversary proceeding and can continue the litigation. It doesn't preclude [him] from going back to the drawing board with discussions with counsel for Marzak and counsel for the EPA and trying . . . for a different structure of a settlement.")); *cf. Bullard*, 575 U.S. at 501 ("An order denying [plan] confirmation is not final, so long as it leaves the debtor free to propose another plan.").

"Clearly an order is inconclusive where events which follow the order can move interested parties from a position of opposition to a position of support." *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 802 (1st Cir. 1985); *see also* 1 Collier on Bankruptcy ¶ 5.08 (16th 2025):

> [O]rders . . . refusing to approve a settlement agreement . . . [are] not the end of the road for the losing party (who . . . can revise the settlement agreement to deal with the court's concerns). Arguments can be made that these orders should be considered final; that is, the merits are reached and disposed of. These arguments have been unavailing, however, and the disappointed party must rely on the appellate tribunal to grant leave to appeal if it is not to be forced back to the drawing board.

7

"In such a case, allowing an appeal before the full significance of the order is manifested would be as a colossal waste of judicial resources." *In re Am. Colonial Broad. Corp.*, 758 F.2d at 802.

The Trustee contends that *In re Maynard* held the opposite, *i.e.*, a decision denying settlement approval is a resolution of a discrete dispute and appealable. (Appellant's Br. dated Jan. 13, 2025 ("Trustee's Br."), Dkt. No. 10 at 3 (citing *In re Maynard*, 290 B.R. 67, 69–70 (D. Vt. 2002))).  The case is not persuasive or analogous here.  For one thing, there the district court recognized that its decision was an outlier; a wealth of cases in the Second Circuit were to the contrary. *In re Maynard*, 290 B.R. at 69 ("[T]he Court recognize[s] that there is authority for the conclusion that an order disapproving a settlement agreement between debtors and the trustee is not final.") (collecting cases); *see also In re Maynard*, 269 B.R. 535, 539 (D. Vt. 2001) (same).  For another, *Maynard* was an attempt to read into contemporary Second Circuit cases a suggestion that denials of settlement approvals were appealable.  290 B.R. at 70 ("[I]t feels that the Second Circuit's most recent precedent permits a determination that the order is final.").  No court in this Circuit has, in the two decades plus since *Maynard*, concurred with this analysis.  But perhaps explaining its unique character, *Maynard* was a § 727 proceeding, *id.* at 68,—an action in which the trustee seeks to deny a debtor a discharge based on certain acts (like making false statements or destruction of

8

records)—which some courts have suggested can *never* be settled.² Indeed, that was the position that the bankruptcy judge in *Maynard* adopted, which the district court found legally erroneous. *Compare In re Maynard*, 258 B.R. 91, 94 (Bankr. D. Vt. 2001):

> It is my view that complaints to deny a discharge must be granted in full or denied in full; there is no middle ground. Neither the Bankruptcy Code nor the Bankruptcy Rules authorize a trustee to seek funds from a debtor in exchange for the trustee giving up an objection to discharge founded upon debtor misconduct.

*rev'd*, 269 B.R. 535 (D. Vt. 2001), *with In re Maynard*, 269 B.R. at 542 ("This Court concludes that a per se rule prohibiting the settlement or compromise of § 727 actions is not justified by the language of the statute or the rule. Moreover, a per se rule would be inconsistent with the broad equitable powers vested in the bankruptcy court."); *see also* Andrew F. Emerson, *So You Want to Buy a Discharge? Revisiting the Sticky Wicket of Settling Denial of Discharge Proceedings in the Chapter 7 Bankruptcy*, 92 Am. Bankr. L.J. 111, 138 (2018) ("Judicial consideration of a proposed settlement of a § 727 denial of discharge proceeding is a controversial issue on which severe disagreement continues to reign among the courts."). That makes *Maynard* legally and factually unique—the court faced a bankruptcy court's "categorical refusal to approve the compromise . . . on any terms." 269 B.R. at 539. This is not a § 727 proceeding, and the parties are free to

---

² *In re Hass*, 273 B.R. 45, 49 (Bankr. S.D.N.Y. 2002):

> Section 727(a) of the Bankruptcy Code sets forth grounds upon which the debtor's discharge may be denied for reasons relating to conduct of the debtor affecting all creditors. Successful prosecution of a claim under Section 727(a) results in a judgment denying the debtor's right to a discharge as to all of his pre-petition creditors.

9

negotiate and resolve the case on terms that might achieve approval. (Oct. 2024 Tr. at 28:7–11).

The Trustee—in attempting to create a final disposition—claims that he will not pursue the adversary proceeding any further. (This about-face is quite contrary to a representation that he will "continue" the case "to conclusion." (Dec. 2023 Tr. at 41:19–22)). In other words, unless the decision to deny approval is deemed final, and reversed, he will simply drop the case against DHR and Rosenblatt. (Trustee's Br. at 2 ("If the Orders are not reversed, the Trustee will close the Chapter 7 case terminating both the Adversary Proceeding and the bankruptcy case."); *see also* Appellant's Reply Br. dated Feb. 24, 2025 ("Trustee's Reply"), Dkt. No. 14 at 3). But a party's decision—and a probabilistic, yet-to-be-taken future contingent one—does not determine finality; the Bankruptcy Court's action does. And, here, the sole action by the Bankruptcy Court was to let the action proceed. The fact that the Trustee may opt to discontinue the case in the future does not make that decision final. Should the Trustee opt to end his case, the adversary proceeding would be closed, and then the dispute would be appealable. But it is not now; a party cannot manufacture finality on the basis of hypothetical future conduct to create appellate jurisdiction.

As an alternative, the Trustee contends that the decision to deny approval is appealable under the collateral order exception. The exception permits review of "a small class" of orders which "do not end the litigation," but are nonetheless, "deemed final." *In re ALBA Petroleos de El Salvador S.E.M. de C.V.*, 82 F.4th 105, 110 (2d Cir. 2023) (quotations omitted). But to avoid the exception swallowing the finality requirement,

10

appealable collateral orders are "only decisions that are conclusive," and they must "resolve important questions separate from the merits . . . that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* (quotations omitted); *see also* 1 Collier on Bankruptcy ¶ 5.08 (16th 2025) ("The collateral order doctrine is a narrow one, and the courts have applied it stringently to assure that it does not swallow the general rule."). The exception is inapplicable unless all three elements—conclusiveness, important questions separate from the merits, and unreviewability—are present. *In re ALBA*, 82 F.4th at 110; *Yerushalmi v. Shibolelth*, 405 B.R. 44, 47–48 (E.D.N.Y. 2009) (applying the collateral order doctrine in bankruptcy appeal (citing *In re Johns–Manville Corp.*, 824 F.2d 176, 180 (2d Cir. 1987))).

The Order does not qualify as a collateral order. The *Iridium* framework for settlement approval requires consideration of the merits of each side's litigation and financial position. *Supra* note 1. And the Order's rationale for denying the proposed resolution was intimately tied to the merits of the parties' claims in the adversary proceeding. (Oct. 2024 Tr. at 21:05–11 ("[T]he record, the evidence, does indeed show a likelihood of success in the adversary proceeding commenced by the Chapter 7 Trustee.")).

The Court cannot extricate the question presented—whether the Bankruptcy Court's decision to deny settlement approval was erroneous—from the decision about the case that remains to be litigated. And, therefore, the collateral order exception does not permit review. *E.g.*, *In re Holloway*, 370 F. App'x at 494 ("The bankruptcy court's

11

order [refusing to enforce a settlement agreement] cannot be separated from the merits of the action[.]"); *In re F.D.R. Hickory House, Inc.*, 60 F.3d 724, 726 (11th Cir. 1995).

   II.   <u>The Motion for Interlocutory Appeal is Denied.</u>

Because the Trustee is not appealing a final decision—and the decision of the Bankruptcy Court is not a collateral order—his appeal is interlocutory.  Section 158(a)(3) provides that the "district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges entered in cases and proceedings[.]"  28 U.S.C. § 158(a)(3).[3]  In its reply brief, the Trustee asks the Court to treat his notice of appeal as a motion seeking interlocutory appeal.  Assuming this is even proper, the motion fails.  "The decision as to whether to grant leave to appeal an interlocutory order of a bankruptcy court is committed to the discretion of the district court."  *Osuji v. U.S. Bank, Nat'l Ass'n*, 285 F. Supp. 3d 554, 557 (E.D.N.Y. 2018) (citing *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003)).  District courts have applied 28 U.S.C. § 1292(b)—which governs certification of interlocutory appeals from district courts to courts of appeals—to determine "whether leave to appeal should be granted under § 158(a)(3)."  *In re Segal*, 557 B.R. 46, 51 (E.D.N.Y. 2016).  Section 1292(b) provides that district courts should certify only those orders that involve "a controlling question of law as to which there is substantial ground for difference of opinion" where "an immediate appeal from the order may

---

[3] Section 158(d)(2), which is not at issue in this case, allows "a bankruptcy court, district court, BAP, or the parties acting jointly to certify a bankruptcy court's order to the court of appeals, which then has discretion to hear the matter." *Bullard*, 575 U.S. at 508.

12

materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). And as applied to the present appeal from the bankruptcy court, the Trustee's motion fails, and the Court denies the motion for interlocutory appeal.

"A 'question of law' under Section 1292(b) refers to 'a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Chenault v. Gen. Motors LLC*, No. 16-CV-3764, 2017 WL 698387, at *2 (S.D.N.Y. Feb. 21, 2017) (quoting *In re Worldcom, Inc.*, No. M-47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)). The Trustee contends the appeal of the settlement denial presents such a question of law. But how could it? The Trustee's "question of law" requires application of the *Iridium* factors to the interests, claims, and circumstances of this case, and a deep dive into the record.[4] *E.g., In re Nuevo Pueblo, LLC*, 608 F. App'x 40, 42 (2d Cir. 2015).

## CONCLUSION

For the reasons explained above, the Court finds that it lacks jurisdiction over this appeal and declines to grant leave for an interlocutory appeal. Accordingly, the

---

[4] The Trustee again leans on *Maynard* and its language noting that without hearing the appeal, the settlement denial will be unrenewable. *In re Maynard*, 290 B.R. at 70. But the review is only delayed, not forfeited, until conclusion of the adversary proceeding. *In re Miner*, 222 B.R. 199, 203 (B.A.P. 2d Cir. 1998) (finding inability to appeal bankruptcy court decision that enforceable settlement did not exist did not mean rights were "irretrievably lost" (quotations omitted)). Any delay is made worse when a party seeks interlocutory appeal and, by so doing, places the underlying adversary proceeding in suspended animation. Judge Scarcella's decision was issued in October 2024, and the case will not resume in earnest until issuance of this decision. This single appeal has cost the parties more than nine months of time. "[E]ach climb up the appellate ladder and slide down the chute" costs the parties valuable time, and "[a]voiding such delays and inefficiencies is precisely the reason for a rule of finality." *Bullard*, 575 U.S. at 504.

appeal is dismissed, and the case is remanded to the Bankruptcy Court for further proceedings.

SO ORDERED.

*/s/ Sanket J. Bulsara*

SANKET J. BULSARA

United States District Judge

Date:  July 16, 2025
      Central Islip, New York

14